**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

SHAWN K. ODNEAL,

                                                          Civil No. 22-3107 (JRT/JFD)

                              Plaintiff,

v.

PAUL SCHNELL, GUY BOSCH, MARRISA          **MEMORANDUM OPINION AND ORDER**
WILLIAMS, STEPHANIE HUPPERT, JENNY              **ADOPTING REPORT AND**
CARUFEL, ERIC HENNEN, LEIGH MCCOY,                  **RECOMMENDATION**
and CELEST AILERU,

                              Defendants.

---

Shawn K. Odneal, OID #235165, Minnesota Correctional Facility Stillwater, 970 Pickett Street North, Bayport, MN 55003, *pro se* Plaintiff.

Corinne Wright, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1400, St. Paul, MN, 55101, for Defendants.


Plaintiff Shawn K. Odneal brings this action against various prison officials, alleging that the Minnesota Department of Corrections' ("DOC") contraband policy violates his First Amendment and procedural due process rights. Magistrate Judge John F. Docherty issued a Report and Recommendation ("R&R") recommending the Court enter summary judgment for the Defendants. Odneal timely objected to the R&R.

Because the DOC's contraband policy is reasonably related to legitimate penological interests and was properly applied to Odneal, Odneal's facial and as applied challenges to the policy fail. And because Odneal was not deprived of a protected liberty

interest, his procedural due process claim also fails.  Even if the Court had found a constitutional violation, however, Defendants would be entitled to Eleventh Amendment and qualified immunity from monetary damages, and the injunctive relief Odneal requests is outside the bounds of what the Prison Litigation Reform Act permits.  Further, because there is no evidence that Defendants acted with evil motive or reckless indifference to Odneal's constitutional rights, Odneal would also not be entitled to punitive damages.  Because there are no genuine disputes of material facts, the Court will adopt the R&R, overrule Odneal's objections, deny Odneal's motion for summary judgment, grant Defendants' motion for summary judgment, and dismiss Odneal's complaint with prejudice.

## BACKGROUND

### I.    FACTS

The R&R provides a comprehensive factual background, unobjected to by either party, which the Court will adopt in full.  (Order & R. & R. ("R. & R.") at 1–7, May 3, 2024, Docket No. 82.)  As such, the Court will only briefly summarize the relevant facts here.

Odneal is serving a life sentence at the Minnesota Correctional Facility in Stillwater ("MCF-STW") after pleading guilty to two counts of first degree aggravated sexual assault of a child.  (Decl. Sarah Knoph ¶¶ 2–3, Exs. 1–2, Aug. 25, 2023, Docket No. 49; Compl. ¶ 12, Dec. 19, 2022, Docket No. 1.)  MCF-STW is a level-four prison that houses inmates who have generally either been convicted of serious or violent crimes or otherwise present a higher risk to staff and other inmates.  (Decl. Mary McComb ("McComb Decl.")

¶ 5, Aug. 25, 2023, Docket No. 50.)  Odneal brings this action to challenge the DOC's

Contraband Policy, which restricts his access to sexually suggestive photos while

incarcerated.  (*See generally* Compl.)

Inmates can receive photos through paper mail and as attachments to email.

(McComb Decl. ¶¶ 11–12.)  However, DOC policy prohibits photos that reasonably

constitute a risk to public safety, the rehabilitation of offenders, or the order and security

of the facility.  (*Id.* ¶ 3, Ex. 1 at 1.)  More specifically, the DOC Contraband Policy, or

Minnesota DOC Policy 301.030, does not permit inmates to receive materials depicting

certain sexually explicit content.  (McComb Decl. ¶ 3, Ex. 2 at 14–15.)  The Contraband

Policy prohibits:

> Published or unpublished sexually explicit materials that
> contain depictions or written descriptions of prohibited
> content including such as examples as:
> (1) Nudity,
> (2) Direct physical stimulation of unclothed genitals,
> (3) Masturbation,
> (4) Sexual intercourse (including vaginal, oral, anal, or
>      bestiality),
> (5) Bodily fluids,
> (6) Flagellation or torture in a sexual context, and
> (7) Sex-related materials determined to constitute a risk to
>      the safety and security of the facility, facilitate criminal
>      activity, or undermine offender/resident rehabilitation.

(*Id.*)  "Nudity" is defined under the Contraband Policy as:

> [T]he depiction of human male or female genitals, anus, or
> pubic area or of the female breast or a substantial portion of
> the breast below the top of the nipple, with or without see-
> through covering, such as "pasties," lace, mesh, and body

> paint through which the covered area is showing; coverings emphasizing the depiction of human genitals; or tight-fitting clothing through which the contours of the genitals are clearly visible.  This definition does not include published material containing nudity illustrating medical, educational or anthropological content.

(*Id.* at 14.)  Under this definition of nudity, inmates may still access photos featuring some skin, like cleavage, bare buttocks with thongs, and breasts with bikini tops.  (McComb Decl. ¶ 10.)

The DOC offers three reasons for limiting inmates' access to these materials.  First, prisoners' access to nude and sexually explicit materials can create a security risk.  (*Id.* ¶ 7.)  Sexually explicit materials are sold, traded, and bartered in prison facilities, which creates tension among inmates and can lead to assaults, which in turn endanger incarcerated bystanders and DOC staff who break up the fights.  (*Id.*)  Additionally, sexually explicit materials reinforce the objectification of women, which prompts inmates to undermine the authority of female corrections officers.  (*Id.*)  Second, sexually explicit materials can interfere with sex offenders' rehabilitation.  (*Id.* ¶ 8.)  Once such materials enter a prison facility, it is impossible to prevent non-sex offenders from passing them to sex offenders.  (*Id.*)  And third, sexually explicit materials can create a hostile work environment for prison staff.  (*Id.* ¶ 9.)  The DOC limits inmates' access to sexually explicit materials to reduce the exposure that DOC staff have to offensive images and to prevent the objectification and harassment of female staff.  (*Id.*)

MCF-STW staff enforce the DOC Contraband Policy.  (*Id.* ¶ 2.)  Every week, each DOC facility receives hundreds, and sometimes thousands, of nude photos sent to inmates through the mail.  (*Id.* ¶ 11.)  All mail at MCF facilities—whether paper or electronic—is subject to search or screening to determine whether it contains prohibited contraband.  (*Id.* ¶¶ 11, 13.)  DOC staff members reviewing for contraband use their professional judgment to determine which photos are prohibited.  (*Id.* ¶¶ 4, 10.)

For paper mail, when DOC staff determine that a photo is prohibited under the Contraband Policy, the DOC sends the inmate a notice of non-delivery that explains why the mailed photo was rejected.  (*Id.* ¶ 3, Ex. 1 at 7–8.)  An inmate can appeal that rejection through a two-step appeals process.  (McComb Decl. ¶ 4.)

In addition to paper mail, inmates can receive electronic photos through email on prison kiosks.  (*Id.* ¶ 12.)  The DOC provides independent regulations and procedures for processing email.  (*Id.* ¶ 12, Ex. 3.)  Each month, the DOC processes tens of thousands of photos sent to inmates through email.  (2nd Decl. Mary McComb ("2nd McComb Decl.") ¶ 2, Dec. 8, 2023, Docket No. 65.)  If DOC staff determine that a photo attached to an email is prohibited under the Contraband Policy, the DOC will enter the reason for the non-delivery of the image into the kiosk service provider software, and the sender of the email will be notified of the rejection and its basis.  (*Id.* ¶ 4.)  The inmate does not receive an electronic notice of non-delivery for rejected email attachments, and there is no process by which an inmate can appeal the rejection of such attachments.  (*Id.*)  The DOC has no

appeal process for rejected electronic attachments because the DOC does not download, print, or retain rejected email attachments, and as such never takes possession of any electronic items sent through the kiosk service provider. (*Id.* ¶¶ 2, 4.) Thus, there would be no way to inspect the image during any appeal process. (*Id.* ¶ 2.) The DOC explains that the tens of thousands of nude photos emailed to inmates per month makes it impractical to institute such a process for electronic attachments. (*Id.* ¶¶ 2–3.)

During his incarceration, Odneal claims to have purchased several hundreds, if not thousands, of "non-nude" photos from approved vendors. (Compl. ¶ 13.) The DOC declined to deliver certain photos that Odneal purchased, some of which were sent to him via postal mail or email. (Decl. Shawn K. Odneal at 1–2, July 31, 2023, Docket No. 42; Compl. ¶¶ 30–31.) At least one of the vendors provided Odneal with warnings that there was no guarantee he would receive his ordered photos given applicable contraband policies. (Sealed Ex. at 34, Nov. 13, 2023, Docket No. 61.)

On one occasion specifically, Odneal alleges that he purchased 50 "non-nude" electronic photos through the kiosk service, only 13 of which were approved. (Compl. ¶ 31.) Odneal was informed that the rejected emailed photos could not be appealed, but that if he wanted to appeal the decision, he could use the paper mail process. (Compl. ¶¶ 31–32.) Meaning, Odneal could reorder the images through the postal mail and, if the photos were rejected again, he could appeal that rejection.

On another occasion, according to Odneal, he purchased 20 "non-nude" images, all of which were denied.  (Pl.'s Mot. Summ. J. at 4, Nov. 13, 2023, Docket No. 60.)  Later, when he ordered the same 20 images again, 11 of the 20 photos were delivered.  (*Id.*)  In addition, Odneal claims that when he tried to purchase a photo that was inside of a catalog already in his possession, the photo was rejected.  (*Id.* at 6–7.)

## II.   PROCEDURAL HISTORY

Odneal filed this 42 U.S.C. § 1983 action, alleging that the DOC's Contraband Policy violates his First Amendment right to freedom of expression and procedural due process.  (Compl. ¶¶ 46–47.)  Odneal levies both facial and as applied First Amendment challenges.  (Pl.'s Mot. Summ. J. at 4–7.)  He seeks declaratory and injunctive relief, compensatory damages, punitive damages against each defendant, and attorney's fees.  (Compl. ¶¶ 49–54.)

Odneal and Defendants cross-moved for summary judgment.  (Pl.'s Mot. Summ. J.; Defs.' Mot. Summ. J., Dec. 8, 2023, Docket No. 63.)  Magistrate Judge Docherty issued an R&R recommending the Court deny Odneal's motion, grant Defendants' motion, and dismiss Odneal's complaint with prejudice.  (R. & R. at 25.)  Odneal filed timely objections to the R&R.  (Pl.'s Obj. to R. & R. at 2–16, May 21, 2024, Docket No. 84.)

## DISCUSSION

### I.      STANDARD OF REVIEW

#### A.      Report and Recommendation

After a magistrate judge files an R&R, a party may "serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1).  "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008).  For dispositive motions, the Court reviews *de novo* a "properly objected to" portion of an R&R.  Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).  "Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to *de novo* review, but rather are reviewed for clear error."  *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015).  The Eighth Circuit has been willing to liberally construe otherwise general *pro se* objections to R&Rs and to require *de novo* review of all alleged errors.  *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994).  Given the breadth of Odneal's objections to the R&R, the Court reviews the entire R&R *de novo*.

#### B.      Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case, and

a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## II.   ANALYSIS

Odneal claims that the Magistrate Judge erred in finding that his First Amendment and procedural due process claims fail. He also argues that Defendants are not entitled to qualified immunity and that he is entitled to punitive damages for their conduct.

### A.   First Amendment

Odneal argues that the DOC'S Contraband Policy limiting inmates from receiving sexually explicit photos violates his rights under the First Amendment. In particular, Odneal claims that the policy's definition of "nudity" is unconstitutionally vague, and that the policy is arbitrarily and inconsistently enforced. Because it is unclear whether Odneal objects to the Magistrate Judge's recommendations regarding his facial or as-applied

challenges to the Contraband Policy, the Court will liberally construe his objections and analyze both types of challenges. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The Supreme Court instructs district courts to balance two competing principles when evaluating prisoners' rights cases. *Sisney v. Kaemingk*, 886 F.3d 692, 697 (8th Cir. 2018). One the one hand, "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). On the other, "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." *Id.* (internal quotation marks omitted). In other words, because prison administration involves exceedingly complex difficulties, courts must give deference to the decisions of appropriate prison officials, especially those who run state penal systems. *Id.* at 85.

In balancing these competing principles to determine whether a regulation violates inmates' constitutional rights, courts must determine whether the regulation is "reasonably related to legitimate penological interests." *Turner*, 490 U.S. at 89. There are four non-exhaustive factors to consider in answering this inquiry:

> (1) whether a rational connection exists between the regulation and a neutral, legitimate government interest; (2) whether alternative means exist for inmates to exercise the constitutional right at issue; (3) what impact the accommodation of the right would have on inmates, prison personnel, and allocation of prison resources; and (4) whether obvious, easy alternatives exist.

*Dawson v. Scurr*, 986 F.2d 257, 260 (8th Cir. 1993) (citing *Turner*, 490 U.S. at 89–91; *Thornburgh v. Abbott*, 490 U.S. 401, 414–19 (1989)). These so-called *Turner* factors apply equally to Odneal's facial and as-applied challenges to the DOC Contraband Policy. *Bahrampour v. Lampert*, 356 F.3d 969, 975 (9th Cir. 2004).

Odneal objects to the Magistrate Judge's application of the *Turner* factors to his First Amendment challenges. The Court will thus analyze each factor with respect to Odneal's facial and as-applied challenges in turn.

### 1. Facial Challenge

Odneal argues that the DOC's Contraband Policy prohibiting inmates from receiving photos depicting nudity or other sexually explicit content via postal service or email, is unconstitutional on its face. The Court disagrees.

### a. Rational Connection Between Prison Policy and Legitimate Governmental Interest

The first *Turner* factor asks the Court to consider "whether the governmental objective underlying the regulations at issue is legitimate and neutral" and whether "the regulations are rationally related to that objective." *Thornburgh v. Abbott*, 490 U.S. 401, 414 (1989). The Court finds that this factor weighs in favor of Defendants.

Here, the DOC offers three reasons for limiting inmates' access to nude and sexually explicit materials: (1) prisoners' access to such materials creates a security risk; (2) such materials interfere with sex offenders' rehabilitation; and (3) such materials create a hostile work environment for prison staff. These objectives are undoubtedly

legitimate. *See, e.g.*, *Dawson*, 986 F.2d at 260–61 (finding rehabilitative and security goals to be valid and legitimate penological goals).

For the neutrality requirement, courts must consider "whether prison regulations restricting inmates' First Amendment rights operate[] in a neutral fashion, without regard to the content of the expression." *Turner*, 482 U.S. at 90. A governmental objective is neutral if the prison regulation "furthers 'an important or substantial governmental interest unrelated to the suppression of expression.'" *Dawson*, 986 F.2d at 261 (quoting *Thornburgh*, 490 U.S. at 415). While the Contraband Policy would be a content-based restriction under normal First Amendment standards, it is neutral because DOC staff only draw distinctions between the materials that are accepted or rejected based on their potential impact on prison security and offenders' rehabilitation. *See Thornburgh*, 490 U.S. at 415–16 ("Where, as here, prison administrators draw distinctions between publications solely on the basis of their potential implications for prison security, the regulations are 'neutral' in the technical sense in which we meant and used that term in *Turner*.").

Finally, the Contraband Policy is rationally related to prison security interests. The DOC has provided evidence that sexually explicit materials pose a threat to the security of the facility, interfere with offenders' rehabilitation, and create a hostile work environment for prison staff. Limiting the circulation of sexually explicit materials clearly furthers the DOC's legitimate goals. *See Dawson*, 986 F.2d at 261.

In his objections, Odneal does not dispute the legitimacy of the DOC's objectives underlying the Contraband Policy.  Rather, he claims that the Contraband Policy is "inconsistent and ineffective" because it "does not hold up the substantial government interest related to security as described in *Dawson* or *Thornburgh*."  (Pl.'s Obj. to R. & R. at 2.)  Odneal's objections therefore challenge whether the Contraband Policy is effective. He contends that the policy fails to support its objectives because it is inconsistently applied within and across MCF facilities due to its vague definition of "nudity."  However, just because the DOC staff exercise their own independent judgment in determining what photos are allowed versus prohibited, which may sometimes result in inconsistencies, does not mean that the Contraband Policy is unconstitutional on its face.  As the Supreme Court noted in *Thornburgh*,

> The exercise of discretion called for by these regulations may produce seeming "inconsistencies," but what may appear to be inconsistent results are not necessarily signs of arbitrariness or irrationality.  Given the likely variability within and between institutions over time, greater consistency might be attainable only at the cost of a more broadly restrictive rule against admission of incoming publications. Any attempt to achieve greater consistency by broader exclusions might itself run afoul of the second *Turner* factor, i.e., the presence or absence of "alternative means of exercising the right" in question.  The regulations at issue here, in our view, strike an acceptable balance.

*Thornburgh*, 490 U.S. at 417 n.15 (internal citations omitted).

The Court thus concludes that the objectives underlying the DOC Contraband Policy are not only legitimate and neutral, but also rationally related to the policy's

limitation of sexually explicit materials in DOC facilities.  Odneal has provided no evidence suggesting that sexually explicit materials prohibited under the policy pose little to no risk to the security of the facility, rehabilitation of offenders, or creation of a hostile work environment.  Nor does he argue that the objectives lack a rational connection to the policy.  Instead, he merely argues that the policy is inconsistently applied in such a way within and across MCF facilities that burdens his constitutional rights, which does not change the Court's analysis or conclusion.  Accordingly, this factor weighs in favor of Defendants.

### b.  Alternative Means to Exercise the Right

The second *Turner* factor asks the Court to consider "whether there are alternative means of exercising the right that remain open to prison inmates."  *Turner*, 482 U.S. at 90.  Under this factor, "the right in question must be viewed sensibly and expansively." *Thornburgh*, 490 U.S. at 417 (internal quotation marks omitted).  "Where other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation."  *Turner*, 482 U.S. at 90 (internal quotation marks, alterations, and citations omitted).

In this case, the Contraband Policy allows for alternative means for inmates to exercise their right to freedom of expression.  Just as in *Thornburgh*, where the Supreme Court found there were alternative means where inmates could send, receive, and read a broad range of publications, here too the DOC policy still permits a wide range of

-14-

content to be received by inmates, so long as the content does not contain contraband. *See Thornburgh*, 490 U.S. at 417–18.  The Contraband Policy does not even ban all sexual content and permits inmates to receive photos featuring some bare skin, including cleavage, bare buttocks with thongs, and breasts with bikini tops.  Alternative means therefore remain open to inmates.

Odneal opposes these alternatives in favor of expanding the Contraband Policy to permit more sexually explicit photos.  He proposes a new definition of nudity that would, in his view, "reflect[] social standards of the [world]."  (Pl.'s Obj. to R. & R. at 6.) Specifically, Odneal proposes to "[l]et Nudity mean Nudity," as opposed to the current definition which includes depictions of "coverings emphasizing the depiction of human genitals; or tight-fitting clothing through which the contours of the genitals are clearly visible." (*Id.*; McComb Decl. ¶ 3, Ex. 2 at 14.)  Nevertheless, the Court has no authority to alter a policy that "permit[s] a broad range of publications to be sent, received, and read." *Thornburgh*, 490 U.S. at 418.  Accordingly, this factor favors Defendants.

### c.    Impact on Others if Right is Accommodated

The third *Turner* factor asks the Court to consider the impact that accommodating the asserted right may have on guards and other inmates, as well as on the allocation of prison resources generally.  *Turner*, 482 U.S. at 90.  "When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials."  *Id.*

-15-

Expanding the definition of nudity would undoubtedly cause a negative "ripple effect" for other prisoners and DOC staff. *Thornburgh*, 490 U.S. at 418. Odneal is incorrect to suggest that there can be no ripple effects where contraband already circulates within DOC facilities. The existing nude content already presents risks; expanding the amount of nude content would expand those risks. *See, e.g.*, *Jackson v. Gutzmer*, No. 16-3831, 2018 WL 7572492, at *7 (D. Minn. Sept. 28, 2018); *Wickner v. McComb*, No. 09-1219, 2010 WL 3396918, at *5 (D. Minn. July 23, 2010); *Smith v. Roy*, No. 10-2193, 2012 WL 1004985, at *11 (D. Minn. Jan. 25, 2012).

Because accommodating Odneal's right to freedom of expression could only be exercised at the expense of others' liberty and safety, the Court defers to the "informed discretion of corrections officials" and finds this factor favors Defendants. *Thornburgh*, 490 U.S. at 418.

### d.  Absence of Ready Alternatives

The fourth *Turner* factor asks the Court to consider whether there are "ready alternatives" to the contested policy. *Turner*, 482 U.S. at 90. The existence of an obvious, easy alternative cuts against the reasonableness of a regulation. *Id.* However, the regulation need not be the "least restrictive alternative." *Id.* "[I]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id.* at 91.

Odneal first proposes that the DOC reinstate its previous definition of nudity used in the 2003 version of the Contraband Policy, which according to Odneal defined nudity as "sexually explicit materials, magazines and personal photographs depicting nudity." (Pl.'s Obj. to R. & R. at 9.)  Odneal primarily takes issue with the fact that over the years, the DOC has expanded its Contraband Policy.  Alternatively, Odneal requests modifying the definition of "nudity" to "showing the actual exposed genitals."  (*Id.* at 10.)  Under Odneal's proposed definition, then, DOC policy would allow photos depicting individuals with any coverings, so long as genitalia are not actually exposed.

However, Odneal's proposed alternatives to expand the policy's definition of nudity would not pose a *de minimus* cost.  In fact, as the Court determined earlier when considering the third *Turner* factor, such an expansion would result in a multitude of negative consequences for inmates and prison staff.  Indeed, as even Odneal admits, the DOC's policy definitions were amended over the years to adapt to the present needs of prison security interests and as a result of complaints by DOC staff.  Reverting back to previous definitions or adopting Odneal's proposed definition would certainly impose costs on prison staff and other inmates, none of which would be *de minimus*.

Additionally, Odneal proposes that the DOC stamp mail with a "DOC APPROVED" mark to avoid inconsistent application of the Contraband Policy if an inmate brings approved photos from one DOC facility when transferred to another.  However, adopting this alternative would prevent DOC facilities from potentially correcting erroneous

judgments at previous DOC facilities.  Plus, this suggested alternative fails to account for the fact that each DOC facility may have slightly different applications of the Contraband Policy due to the varying security risks that sexually explicit materials may present in different prison settings.   A facility with a significant number of sex offenders, for example, may have a slightly stricter enforcement of the Contraband Policy than a facility with fewer sex offenders, where the risk of rehabilitation interference may be lower.  This suggested alternative therefore would not impose a *de minimis* cost.

After reviewing Odneal's proposals, the Court concludes that the record of this case does not reveal any ready alternatives to the Contraband Policy that would impose a *de minimis* cost.

After considering all four *Turner* factors, the Court concludes that the DOC Contraband Policy limiting inmates from receiving sexually explicit photos is rationally related to a legitimate penological interest.   Therefore, the Contraband Policy is not facially invalid.

### 2.  As-Applied Challenge

Odneal argues that even if the DOC Contraband Policy is facially valid, it is nevertheless unconstitutional as applied to him.  The Court disagrees.

The *Turner* factors apply equally to Odneal's as-applied challenge as it does to his facial challenge.  *Bahrampour*, 356 F.3d at 975.  The Court has already concluded that the Contraband Policy is rationally related to a legitimate penological objective.  Thus, the

Court turns its attention to whether there remains a genuine dispute of material fact regarding whether the prison officials had legitimate reasons to apply the Contraband Policy to the inmate bringing the as-applied challenge. *Wickner*, 2010 WL 3396918, at *4 (citing *Hargis v. Beauchamp*, 312 F.3d 404, 410–11 (9th Cir. 2002)).  Accordingly, the Court must determine whether no reasonable jury could find that the prison officials at MCF-STW did not have a legitimate reason to reject the photos ordered by Odneal that they determined to have violated DOC policy.

Here, there is no genuine dispute that the MCF-STW prison officials acted reasonably in denying Odneal access to the photos because they believed that doing so would further the legitimate penological goals of maintaining prison security, preventing interference with sex offenders' rehabilitation, and avoiding a hostile work environment for prison staff.  Odneal is imprisoned for a serious sexual offense against a minor.  It is therefore reasonable that DOC staff limited his access to sexually explicit materials.  *See Yaritz v. Schnell*, No. 22-2042, 2023 WL 3721630, at *3 (D. Minn. May 30, 2023), *aff'd*, No. 23-2457 (8th Cir. June 28, 2024).  Accordingly, Odneal's as-applied challenge to the Contraband Policy fails.

### C.      Procedural Due Process

Odneal argues that the Contraband Policy violates his right to procedural due process under the Fourteenth Amendment.[1]  In particular, he challenges the DOC's practice of rejecting photos attached to emails that violate the Contraband Policy without providing notice to the inmate to whom they were sent and without giving the inmate an opportunity to appeal the rejection.

"To state a procedural due process violation, [Odneal] must first demonstrate the deprivation of a protected liberty or property interest."  *Bonner v. Outlaw*, 552 F.3d 673, 676 (8th Cir. 2009).  If there has been such deprivation, "the amount of process due [Odneal] is determined by balancing the specific interest affected, the likelihood the challenged action would result in an erroneous deprivation of that right, and the burden of providing additional procedures, including administrative costs and burdens."  *Id.*

The Supreme Court and the Eighth Circuit have held that prisoners have a protected liberty interest in "uncensored communication" under the due process clause of the Fourteenth Amendment. *Procunier v. Martinez*, 416 U.S. 396, 417 (1974), *overruled on other grounds by Thornburgh*, 490 U.S. at 413–14; *Bonner*, 552 F.3d at 676.  This interest is protected regardless of the form that the correspondence takes.  *Bonner*, 552 F.3d at 676–77.  Just as physical letters are protected, *Martinez*, 416 U.S. at 417, so too

---

[1] Odneal initially brought a Fifth Amendment due process claim, but Magistrate Judge Docherty correctly interpreted it as a Fourteenth Amendment due process claim against the state.  (*See* Compl. ¶ 47; R. & R. at 19 n.7.)

are emails. *See Benning v. Comm'r, Georgia Dep't of Corrections*, 71 F.4th 1324, 1330–31 (11th Cir. 2023). Thus, the censorship or withholding of inmates' email correspondence "must be accompanied by minimum procedural safeguards." *Martinez*, 416 U.S. at 418–19; *see also Benning*, 71 F.4th at 1329–31 (concluding that inmate had a liberty interest in censored emails that triggered procedural due process protections).

Having concluded that Odneal had a liberty interest in censored emails that triggered due process protections, the next inquiry is whether the DOC denied Odneal his due process rights when rejecting photos he had ordered through email. *Bonner*, 552 F.3d at 676–79. Minimum procedural safeguards include notice to the inmate that the correspondence was rejected, the opportunity to object to the decision, and the opportunity to appeal to a decisionmaker who was not involved in the initial censorship decision. *Martinez*, 416 U.S. at 418–19.

As for notice, it is clear on this record that Odneal received notice regarding the rejection of emailed photos when he realized that only a portion of his ordered electronic photos were delivered to his email. He was on notice from the sender's website before even ordering the photos that delivery was not guaranteed given the DOC's contraband policy, and he received actual notice when the photos were never delivered to his email address from the vendor. Odneal does not dispute this. Rather, he argues that this form of notice was insufficient to comport with due process. However, Odneal cannot show that he was denied notice of the censorship he challenges. *Heard v. Chavez*, 699 Fed.

App'x 788, 790–91 (10th Cir. 2017) ("[Plaintiff] cites no authority, nor are we aware of any, for the proposition that the notice component of a due process claim can be violated even when actual notice is accomplished.").

Although Odneal argues that he did not have the opportunity to object and appeal the rejected photos, minimum procedural safeguards are in place. Odneal can either re-order rejected electronic photos as physical ones through the postal service and appeal their rejection if they are denied through the postal mail process, or else order all photos physically through the postal service and appeal their rejection right away if they are denied. These procedures do not violate due process merely because they de-incentivize inmates from purchasing electronic photos that might be censored as opposed to physical ones. An independent appeal process for the censorship of electronic photos would impose substantial burdens and costs on the DOC, especially given the volume of photos the DOC processes per month and the resources needed to hire and retain additional staff to process appeals. Since this change would be implemented across all DOC facilities, these burdens would be amplified. The Court therefore concludes that the DOC policy satisfies the procedural requirements of due process.

Because Odneal received actual notice the censorship of his email correspondence and was not denied minimum procedural safeguards to protect his liberty interest in uncensored communications, Odneal's procedural due process claim fails.

### D.     Defendants' Liability

The Court concluded there was no constitutional violation.  Even if it did, however, Defendants would be immune from damages liability.

Odneal brings this action against Defendants under 42 U.S.C. § 1983.  (Compl. ¶ 1.) Section 1983 permits litigants to seek relief against public employees and others acting "under color of state law" for violations of federal constitutional rights.   Under the statute, public employees can be sued in either their official capacity, individual capacity, or both*.  Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citing *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997)).

Odneal's complaint does not specify in what capacity Defendants are being sued.[2] And the Eighth Circuit has made clear that to sue a public employee in their individual capacity, "a plaintiff must expressly and unambiguously state so in the pleadings, otherwise it will be assumed that the defendant is sued only in his or her official capacity." *Id.* (*citing Artis v. Francis Howell N. Band Booster Ass'n Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998)).  In the absence of an express statement saying otherwise in his complaint, the Court construes Odneal's claims against Defendants only in their official capacity.

---

[2] Odneal expressly states that he is suing Defendants in their individual and official capacities for the first time in his objections to the R&R, but he did not include such an express statement in his complaint, as required.  (*See* Pl.'s Obj. to R. & R. at 16.)

### 1.    Official Capacity

Because Odneal brings claims against DOC employees in their official capacity, he is essentially suing the State of Minnesota. *See Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007).   "The Eleventh Amendment grants a state immunity from suits brought in federal court by its own citizens as well as citizens of another state." *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 (8th Cir. 1999).   A state can waive its immunity, but it is undisputed that Minnesota has not consented to this suit. *See id.*  Therefore, Defendants are entitled to immunity under the Eleventh Amendment.   As a result, Odneal would not be entitled to compensatory damages even if the Court had found a constitutional violation.

In addition to compensatory damages, Odneal requests injunctive relief.  (Compl. ¶ 50.)  The Supreme Court recognized an exception to Eleventh Amendment immunity in *Ex Parte Young*, 209 U.S. 123 (1908), which allows individuals to seek prospective equitable relief against public officials to prevent ongoing violations of federal law. *McDaniel v. Precythe*, 897 F.3d 946, 951–52 (8th Cir. 2018).   To meet this exception, Odneal must allege an "ongoing violation of federal law" and seek relief that is "properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks and citation omitted).   The Court has already concluded that the DOC's procedures for rejecting electronic attachments to emails that violate the Contraband Policy does not violate the First Amendment or due process, so Odneal has failed to allege an ongoing violation of federal law.

Even if the Court had found otherwise, however, the injunctive relief that Odneal

seeks is outside the bounds of what the Prison Litigation Reform Act ("PLRA") permits.

The PLRA requires that injunctions with respect to prison conditions be narrowly tailored.

18 U.S.C. § 3626(a)(1).  Specifically, the statute states that:

> Prospective relief in any civil action with respect to prison
> conditions shall extend no further than necessary to correct
> the violation of the Federal right of a particular plaintiff or
> plaintiffs. The court shall not grant or approve any prospective
> relief unless the court finds that such relief is narrowly drawn,
> extends no further than necessary to correct the violation of
> the Federal right, and is the least intrusive means necessary
> to correct the violation of the federal right. The court shall
> give substantial weight to any adverse impact on public safety
> or the operation of a criminal justice system caused by the
> relief.

*Id.*  Here, Odneal's requested remedy is to require the DOC to modify the definition of

nudity in the Contraband Policy and to provide notice and an opportunity to appeal when

rejecting photos emailed through the kiosk service.  Such relief would be extensive and

intrusive, however, as it would apply across all DOC facilities and its implementation

would create significant administrative burdens.  *Native Am. Council of Tribes v. Weber*,

750 F.3d 742, 753–54 (8th Cir. 2014) ("[T]he scope of the remedy must be proportional to

the scope of the violation, and the order must extend no further than necessary to

remedy the violation." (quoting *Brown v. Plata*, 563 U.S. 493, 531 (2011))).  Modifying the

definition of nudity would expand the kind of sexually explicit materials permitted in DOC

facilities, which would cause significant security and rehabilitative concerns.  And DOC

facilities process hundreds and sometimes thousands of sexually explicit photos sent to inmates through the kiosk services, such that requiring the DOC to alter its kiosk service appeal process would be unduly burdensome. Thus, even if the Court had found a constitutional violation, it could not grant Odneal the injunctive relief that he requests.

### 2. Individual Capacity

Though Odneal did not expressly bring claims against Defendants in their individual capacity, he argues in his objections to the R&R that Defendants are not entitled to qualified immunity. The Magistrate Judge did not consider this issue, and need not have, because Odneal did not expressly and unambiguously state that his claims were against Defendants in their individual capacity. Nevertheless, even if he had done so, and even if the Court had found a constitutional violation, Defendants would be entitled to qualified immunity.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012.) A clearly established right is one that is "sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (alterations in original). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

If the Court had found a constitutional violation, the appropriate inquiry here would be whether it was sufficiently clear that Defendants were violating Odneal's

constitutional rights when they rejected certain electronic sexually explicit photos. The Court finds it was not. Courts have consistently found that the DOC policy does not violate the First Amendment. *See Jackson*, 2018 WL 7572492, at *6–8; *Baasi v. Fabian*, No. 09-781, 2010 WL 924384, at *10–14 (D. Minn. Mar. 11, 2010). And while it is clear that inmates have a protected liberty interest in uncensored communications, few cases have considered how that liberty interest should be protected in the form of email correspondence. As far as the Court can tell, no Supreme Court, Eighth Circuit, or Minnesota Supreme Court decisions are on point. *See Benning*, 71 F.4th at 1333–34 (discussing same for Eleventh Circuit and Georgia Supreme Court decisions). Given the lack of precedent, therefore, there is not clearly established law to make it "beyond debate" that not providing formal notice and an opportunity to appeal when rejecting electronic sexually explicit photos violates due process. *Reichle*, 566 U.S. at 664. Accordingly, even if Odneal had brought claims against Defendants in their individual capacity, Defendants would be entitled to qualified immunity.

### E.    Punitive Damages

Odneal also seeks punitive damages, and he objects to the Magistrate Judge's determination that punitive damages should not be awarded in this case. (Compl. ¶ 52.) Punitive damages are available under § 1983 only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *McAdoo v. Martin*, 899 F.3d 521, 527 (8th Cir. 2018) (quoting *Schaub v. Vonwald*, 638 F.3d 905, 922 (8th Cir. 2011)). Such

damages are awarded "to punish the defendant for his or her willful or malicious conduct and to deter others from similar behavior." *Thurairajah v. City of Fort Smith, Arkansas*, 3 F.4th 1017, 1026 (8th Cir. 2021) (quoting *Coleman v. Rahija*, 114 F.3d 778, 787 (8th Cir. 1997)).  To prove reckless indifference, there must be evidence that Defendants "acted in the face of a perceived risk that his or her actions would violate federal law." *McAdoo*, 899 F.3d at 527 (quoting *Swipes v. Kofka*, 419 F.3d 709, 718 (8th Cir. 2005)) (cleaned up).

Nothing in the record indicates that Defendants were motivated by evil motive or intent or showed reckless indifference to Odneal's constitutional rights.  And Odneal does not point to anything suggesting as such.  Odneal's disagreement with the DOC's policy and its enforcement does not evidence evil motive or intent or reckless indifference to his federal constitutional rights.  Therefore, even if the Court had found a constitutional violation, Odneal would not be entitled to punitive damages.

## CONCLUSION

Because the DOC Contraband Policy is rationally related to a legitimate penological interest, Odneal's facial and as-applied First Amendment challenges fail.  Because Odneal was not deprived of a protected liberty interest, his procedural due process claim also fails.  Even if the Court had found a constitutional violation, however, Defendants would be entitled to Eleventh Amendment and qualified immunity from monetary damages, and the injunctive relief Odneal requests is outside the bounds of what the PLRA permits. Finally, because there is no evidence that Defendants acted with evil motive or intent or

showed reckless indifference to Odneal's constitutional rights, Odneal would also not be entitled to punitive damages.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Report and Recommendation [Docket No. 82] is **ADOPTED**;

2. Plaintiff's Objections to the Report and Recommendation [Docket No. 84] are **OVERRULED**;

3. Plaintiff's Motion for Summary Judgment [Docket No. 60] is **DENIED**;

4. Defendant's Motion for Summary Judgment [Docket No. 63] is **GRANTED**; and

5. Plaintiff's Complaint is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  July 15, 2024
at Minneapolis, Minnesota.

_____s/John R. Tunheim_____
JOHN R. TUNHEIM
United States District Judge